RAMEX CONSTRUCTION CO., Bufete Industrial Infraestructura, S.A. De C.V. and Seaboard Surety Co., Appellants,

v.

TAMCON SERVICES INC. and Standard Cement Materials Inc., Appellees.

Tamcon Services Inc. and Standard Cement Materials Inc., Appellant,

v.

Ramex Construction Co. Inc., Bufete Industrial Infraestructura S.A. De C.V. and Seaboard Surety Co., Appellee.

No. 14–97–01209–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 6, 2000.

Opinion Granting Rehearing in Part Sept. 14, 2000.

Rehearing Overruled Oct. 19, 2000.

Joe William Meyer, Robert L. Lipset, Houston, for appellants.

Gerald Scott Siegmyer, Allison J. Snyder, Houston, for appellees.

Panel consists of Justices SEARS, DRAUGHN, and EVANS.*

* Senior Justices Ross A. Sears, Joe L. Draughn,

## OPINION

ROSS A. SEARS, Justice, (Assigned).

This is a breach of contract action involving a general contractor, subcontractor, supplier and surety. All parties appeal. Because the jury's verdict was based on a ground unsupported by the pleadings, we reverse and remand.

Ramex Construction (the lead partner of a joint venture which included Bufete Industrial) was general contractor on a City of Houston sewer project. Tamcon Services signed two contracts with Ramex to refurbish manholes and install new ones at the ends of existing sewer lines. Because of unanticipated difficulties in finding the ends of the manholes, Tamcon fell behind schedule and was eventually terminated. Tamcon argued Ramex caused and aggravated the problem because it refused to pay in a timely fashion, even after Ramex was paid by the city for work completed by Tamcon. Ramex argued Tamcon was terminated because it could not do the work it contracted to do. Meanwhile, Standard Cement Materials, which supplied Tamcon with the special concrete used in the manholes, sought payment from Seaboard Surety Co., the surety on the project. *See* TEX.GOV'T CODE ANN. § 2253.021 (Vernon Pamph.2000).

Tamcon's and Standard's Second Amended Original Petition alleged Ramex breached the subcontract by failing to make timely payments to Tamcon and by failing to grant extensions in the schedule for unanticipated conditions. The suit also asserted causes of action for quantum meruit, quantum valebant and unjust enrichment, and under Texas's prompt-pay provisions, TEX.GOV'T CODE ANN. § 2251.022 (Vernon Pamph.2000) and surety provisions, TEX.GOV'T CODE ANN. § 2253 (Vernon Pamph.2000). Finally, the suit sought consequential damages equal to the value of Tamcon Inc., which had to cease doing business due to Ramex's refusal to pay for work performed by Tamcon.

and Frank Evans sitting by assignment.

The jury was asked the following questions on liability:

## QUESTION 1

Did Tamcon or Ramex/Bufete fail to comply with the Subcontracts?

Failure to comply by one party is excused by the other party's previous failure to comply with a material obligation of the same agreement.

Failure to comply by one party is excused by waiver of the other party. A waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No" as to each of the following:

Subcontract 56 <u>YES</u> Ramex/Bufete
<u>NO</u> Tamcon

Subcontract 49 <u>YES</u> Ramex/Bufete
<u>NO</u> Tamcon

If your answer is "Yes" as to Ramex/Bufete in any part of Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 2

What some of money, if any, paid now in cash, would fairly and reasonably compensate Tamcon for its damages resulting from such conduct?

Consider the following elements of damages, if any, and none other. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find. Do not include in your answer any amount that you find Plaintiff could have avoided by the exercise of reasonable care.

a. Invoices for work.

b. Unpaid retainage.

c. payment for thrust blockwork, and

d. Value of Tamcon as of July <u>18</u>, 1995.

Answer in dollars and cents for damages, if any.

Answer: <u>175,884.86</u>

The jury also found that Standard had properly perfected its lien and was entitled to payment from the bond. The trial court entered judgment on the jury's verdict for $175,884.86 plus attorney's fees of $51,273 for Tamcon and ordered payment to Standard Cement of $60,884.25 from Seaboard, along with $41,273 in attorney's fees.

In eight points of error Ramex and Seaboard contend: (1) that Tamcon breached the subcontract as a matter of law; (2) that the jury's verdict was against the great weight of the evidence; (3) that Ramex did not breach the agreement as a matter of law, or that any breach was excused or waived by Tamcon's prior breach; (4) that the jury's finding that Ramex breached was against the great weight of the evidence; (5) that the claim was poorly presented to the jury; (6) that the trial court erred in asking the jury about the value of Tamcon as an element of damages; (7) that the trial court erred in not offsetting damage awards against amounts owed; and (8) that Standard Cement did not properly perfect its claim. In its cross-petition Tamcon argues the trial court erred in not permitting Steve Tamez, the principle shareholder of Tamcon, to testify as to the value of his company.

It is undisputed that Tamcon did not complete its subcontract; indeed, Tamcon concedes that the work performed was not done in a timely manner because of the difficulty in locating the ends of sewer lines. Moreover, the contract stipulated that Tamcon's timely performance was essential to the contract.

 Generally, a party who is in default of a contract cannot maintain a suit for its breach. *Joseph v. PPG Industries,* 674 S.W.2d 862, 867 (Tex.App.—Austin 1984, writ ref'd n.r.e.). However, breach of contract may be waived. *See, e.g., Chilton Ins. v. Pate & Pate Enter.,* 930 S.W.2d 877, 888 (Tex.App.—San Antonio 1996, writ denied) and cases cited therein. Tamcon argues Ramex waived its right to time-

ly performance as a matter of law.[1] However, Tamcon did not plead waiver. Even if the issue of waiver was tried by consent, Tamcon was obligated to amend its pleadings to support the waiver issue prior to its submission to the jury. Tex.R.Civ.P. 67; *Bedgood v. Madalin,* 600 S.W.2d 773, 775–776 (Tex.1980). Because Tamcon's recovery was impliedly based on a ground that it did not plead, we must reverse the judgment and remand the cause for a new trial.

Additionally, because a surety's liability is derivative of the principal's liability, the judgment in favor of Standard Cement must also be reversed and remanded. *Wright Way Const. v. Harlingen Mall Co.,* 799 S.W.2d 415, 426 (Tex.App.—Corpus Christi 1990, writ denied) (citing *Hamilton v. Prescott,* 73 Tex. 565, 11 S.W. 548 (1889)).

■ Tamcon brings a cross-point arguing that it was error for the trial court to exclude the testimony of Steve Tamez, the owner of Tamcon, on the value of Tamcon as a going concern. We agree.

■ The owner of real property may testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else. *Porras v. Craig,* 675 S.W.2d 503, 505 (Tex. 1984). The owner of a business is likewise permitted to testify as to its value, if he had a basis of knowledge of the value of the business. *Burford Oil Co. v. Wadley,* 41 S.W.2d 689, 694 (Tex.Civ.App.—El Paso 1931, writ ref'd); *Laprade v. Laprade,* 784 S.W.2d 490, 493 (Tex.App.—Fort Worth 1990, writ denied). Ramex attempts to distinguish this situation by arguing that Steve Tamez is not the sole proprietor of the business, but merely a stockholder of a closely held business. We disagree. Tamez testified that he held an accounting degree; that he had worked for the company from its inception until its liquidation, except for a yearlong period while he was

earning his degree; that he was familiar with the accounts receivable and the company's books; and that he was the person who oversaw liquidation of the company's assets when it shut down. We think Tamez showed a basis of knowledge of the value of Tamex, and that this was testimony which would be helpful in guiding a jury in answering the question of the value of Tamcon. We therefore find the trial court erred in not permitting this testimony. We sustain Tamcon's cross-point.

The judgment of the trial court is reversed and the cause remanded for a new trial consistent with this opinion.

## OPINION ON MOTION FOR REHEARING

This is a breach of contract action involving Ramex, a general contractor; Tamcon, a subcontractor; Standard, a supplier of materials; and Seaboard, Ramex's surety. In our original opinion we reversed and remanded a jury verdict in favor of Tamcon and Standard.

## TAMCON'S MOTION FOR REHEARING

■ Tamcon moved for rehearing, contending that certain evidence established waiver as a matter of law. Tamcon concedes that the evidence supporting this point was not in the appellate record, so it was attached as an exhibit to its motion for rehearing. However, we may not consider exhibits or appendices attached to briefs or motions that are not part of the appellate record. *Till v. Thomas,* 10 S.W.3d 730, 734 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *America Online Inc. v. Williams,* 958 S.W.2d 268, 275 (Tex.App.-Houston [14th Dist.] 1998, no pet.). We overrule Tamcon's motion for rehearing.

---

1. The pages cited by Tamcon's counsel at oral argument are missing from our record. This is not surprising; the original clerk's record was lost in the court below and we are reviewing a stipulated record reconstructed from the files of the attorneys involved in the case.

STANDARD'S MOTION
FOR REHEARING

Standard Cement also moved for rehearing. It argues that the case we relied upon in our original opinion, *Wright Way Constr. Co. v. Harlingen Mall,* 799 S.W.2d 415 (Tex.App.-Corpus Christi 1990, writ denied) is distinguishable from the present case. We agree.

The *Wright Way* case involved a warranty claim against the contractor (and his surety) over the quality of work performed by the contractor. Here, the claim is against a contractor's surety for monies due on materials supplied.

■ It is not disputed that Standard provided materials used on the project and that Standard has not been paid for those materials. Therefore we agree that Standard's recovery is dependent upon whether Standard perfected its claim in accordance with the statutory requirements. It does not depend on the outcome of a dispute between a contractor and subcontractor.

Because a subcontractor or supplier may not place a lien against a public building, the legislature passed what has become known as the McGregor Act, which requires contractors to secure a bond to ensure payment. *See Featherlite Building Products Corp. v. Constructors Unlimited,* 714 S.W.2d 68, 69 (Tex.App.-Houston [14 th Dist.] 1986, writ ref'd n.r.e.). In order to recover under this system, a supplier must mail to the contractor and his surety notice of claim. TEX. GOV'T CODE ANN. § 2253.041 (Vernon Pamph.2000). This notice must be accompanies by a sworn statement of account which sets forth that the amount claimed is just and correct, and that all just and lawful offsets known to the affiant have been allowed. *Id.* If a written contract does not govern the relationship between the supplier and the contractor, the notices must also show for whom the material was supplied, the date of performance or delivery, a reasonable identification and the amount due. TEX. GOV'T CODE ANN. § 2253.043 (Vernon Pamph.2000). Additionally, the claim must include copies of documents, invoices or orders that reasonably identify the project. *Id.*

■ Because the Act is remedial in nature,"it is to be given the most comprehensive and liberal construction possible." *Featherlite,* 714 S.W.2d at 69; *see also City of Mason v. West Texas Util. Co.,* 150 Tex. 18, 237 S.W.2d 273, 280 (1951). Numerous cases have held that the Act's notice requirements are satisfied by substantial compliance. *Id.* (quoting *Sims v. William S. Baker, Inc.,* 568 S.W.2d 725, 730 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.)); *see also United States Fidelity & Guaranty Co. v. Parker Bros. & Co.,* 437 S.W.2d 880 (Tex.Civ.App. Houston [1st Dist.] 1969, writ ref'd n.r.e.); *Lesikar Construction Company v. Acoustex, Inc.,* 509 S.W.2d 877 (Tex.Civ.App.Fort Worth 1974, writ ref'd n.r.e.); *Citadel Construction Co. v. Smith,* 483 S.W.2d 283 (Tex.Civ.App.Austin 1972, writ ref'd n.r.e.).

The jury was asked whether Standard had perfected its claim under the statutory requirements. The jury found that it had. Our review of the record shows that Standard substantially complied with the statutory requirements. We will not disturb this jury's findings on this issue.

Standard's motion for rehearing is granted and we affirm the trial court's judgment in favor of Standard against Seaboard Surety Company.

D. CAMILLE HUTSON–DUNN,
Justice, concurring on motion for rehearing.

Although I agree with my fellow justices that Tamcon's claim should be remanded for a new trial because Tamcon's recovery was unsupported by its pleadings, I write separately to elaborate on the error which requires this result.

Tamcon argues in its motion for rehearing that the complained-of error was harmless because the question of waiver was submitted as an instruction. An error in

**140**

jury instructions, Tamcon argues, cannot be grounds for reversal. There are two problems with this argument. First, the jury should have been submitted a *question*, along with an instruction, on waiver. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES-BUSINESS, CONSUMER, INSURANCE, EMPLOYMENT PJC § 101.21 (1998) and comment; PJC § 101.24. Tamcon cannot contend that an omitted jury question cannot be grounds for reversal.

Second, the supreme court has recently found that an erroneous jury charge is subject to reversal unless the intermediate appellate court is satisfied that "properly submitted theories constituted the basis of the jury's verdict." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex.2000)(on reh'g); *see also Borneman v. Steak & Ale of Texas*, 22 S.W.3d 411, 413 (Tex. 2000)(jury charge which permitted jury to find liability on erroneous ground requires reversal). We cannot find that Ramex's waiver was a properly submitted theory, because it was unsupported by pleadings and because Ramex objected to its trial by consent.

This charge was so inadequate as to invite error. Ramex *did* plead and bring forward proof of waiver on Tamcon's part. This charge permitted the jury to take an instruction meant to be applied against Tamcon and use it in Tamcon's favor. I would therefore find, consonant with *Casteel*, that this jury charge was reversible error.